SEABURY HOUSING
ASSOCIATES, Plaintiff,

v.

The HOME INSURANCE COMPANY
and Dunfey Agency, Inc.,
Defendants.

Civ. No. 87–0350–P.

United States District Court,
D. Maine.

Sept. 15, 1988.

Michael A. Nelson, Jensen, Baird, Gardner & Henry, Portland, Me., for plaintiff.

William W. McCandless, John S. Whitman, Portland, Me., for Dunfey Agency, Inc.

Gregory W. Powell, Friedman & Babcock, Portland, Me., for Home Ins. Co.

MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT HOME'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

### I. Introduction

During the construction of a condominium project in York, Maine, Plaintiff Seabury Housing Associates ("Seabury") engaged Dunfey Agency ("Dunfey") to secure insurance for the project. With Seabury's consent, Dunfey selected a builder's risk policy offered by The Home Insurance Company ("Home"), and completed the necessary documentation. Dunfey then assured Seabury that the project was comprehensively insured.

Approximately three months after the policy took effect, Seabury's condominium project was destroyed by fire. Seabury filed, and Home paid, two claims for damages and costs. A year later, Seabury filed a claim for "soft costs."[1] Home refused to pay the claim, arguing that Seabury's policy did not provide "soft costs coverage."

Seabury filed this action against Dunfey and Home, alleging that Home breached the insurance policy, violated Maine law[2] by disputing an insurance claim in bad faith, and breached its duty of good faith and fair dealing. Seabury claims that if its policy did *not* contain soft costs coverage, then Dunfey had breached its agreement to secure the coverage Seabury had requested, had negligently failed to obtain the proper coverage, had negligently misrepresented the scope of Seabury's coverage, and had breached its fiduciary duty to Seabury.

Home filed a crossclaim against Dunfey for contribution and indemnification. Dunfey, in turn, filed a similar crossclaim against Home. Seabury has moved for partial summary judgment against Home on the issue of liability. Home has itself moved for summary judgment against Seabury and Dunfey, claiming that the policy unambiguously excludes soft costs cover-

---

1. In its memorandum in support of its Motion for Summary Judgment, Home explains "soft costs" as including interest payments on financing, real estate taxes and lost rental income or profits incurred by the insured delay.

2. Seabury claims that Home violated 24–A M.R. S.A. § 2436, which provides, in pertinent part:
   1. A claim for payment of benefits under a policy of insurance . . . is payable within thirty days after proof of loss is received by the insurer and ascertainment of the loss is made either by written agreement between the insurer and the insured or by filing with the insured of an award by arbitrators . . . [A] claim which is neither disputed nor paid within thirty days is overdue, provided that if during the thirty days the insurer, in writing, notifies the insured that reasonable additional information is required, the undisputed claim shall not be overdue until thirty days following receipt by the insurer of the additional required information . . .
   2. An insurer may dispute a claim by furnishing to the insured . . . a written statement that the claim is disputed with a statement of the grounds upon which it is disputed.

age, and claiming that Seabury has not introduced sufficient evidence of bad faith to support an action under 24-A M.R.S.A. § 2436 or a claim for punitive damages.[3]

For reasons set forth in this opinion, the Court denies Plaintiff's motion, grants Home's motion as to the bad faith, and denies Home's motion in all other respects.

## II. Analysis
### A.

The type of insurance policy at issue here, "Home's Extra-Strength Builder's Risk Policy," contains a maximum of five types of coverage: property damage, contractor's equipment, general liability, structural defects and soft costs. According to Home, the insurance customer selects between the available types of coverage, opting to purchase all five types of coverage or to exclude those types for which it needs no protection.

It is this selection process that underlies the motions before the Court. Home claims that neither Seabury, nor Dunfey on Seabury's behalf, requested soft costs coverage. It claims, on this basis, that the builder's risk policy it underwrote for Seabury did not contain soft costs coverage. Seabury and Dunfey, in contrast, say that they did request soft costs coverage, and that the policy provided it.

Thus, for the Court to grant summary judgment, it must determine that the policy is unambiguous. It must also determine that there exists no genuine issue of material fact as to whether Seabury asked Dunfey, or Dunfey asked Home, for soft costs coverage. On this record, the Court can do neither.

■ First, there exists a genuine ambiguity in the interpretation of the policy's language. Home emphasizes that, on Seabury's policy, no coverage limit or premium have been inserted in the section reserved for soft costs coverage. It argues that this indicates that no such coverage was includ-

ed. Indeed, the soft costs coverage section on Seabury's policy is blank.

Seabury and Dunfey claim, however, that while the soft costs section on Seabury's policy does not contain a coverage limit or premium, neither does it contain the words "not covered." Home typed those words in the contractor's equipment section and the contractor's liability section, which Seabury specifically requested be excluded from coverage. It did not type those words in the soft costs section.

Seabury and Dunfey have offered the affidavit of Charles Story, the Dunfey agent most closely involved with Seabury's policy, which attests that a second builder's risk policy, written by Home for another Dunfey client, contained the words "not covered" in *all* sections that the client asked be excluded from coverage.

■ The "four corners" of the policy support both arguments. While the policy does not expressly *include* soft costs coverage, neither does it expressly *exclude* that coverage, as it does other types of coverage even though provision is made for the insurer to do so. Thus, there exists an ambiguity in the language of the contract. The interpretation of this ambiguous contract language is a genuine issue of material fact that cannot properly be disposed of on this record. Summary judgment on the scope of the policy's coverage is therefore inappropriate.

■ Second, there exists a genuine factual issue as to whether Seabury and Dunfey requested or intended to request soft costs coverage. Seabury and Dunfey argue that regardless of the language of the policy, their intent in negotiating Seabury's policy with Home was to include soft costs coverage.

Home argues, in opposition, that in its coverage discussions with Home representatives, Dunfey never specifically requested soft costs coverage on Seabury's behalf. Home has offered the affidavit of John Condon, the Home underwriter who

ages.

worked most closely with Dunfey on the Seabury policy, to support this claim.

Home claims, in addition, that the insurance binder Dunfey wrote for Seabury contained no mention of soft costs coverage. It claims that Dunfey did not question the lack of a soft costs premium or coverage limit in the final policy Home prepared. Home has offered extensive documentation to support these claims.[4]

Finally, Home claims that Dunfey called Home on Seabury's behalf after the fire to discuss adding soft costs coverage to Seabury's policy. Condon's affidavit attests that Story "indicated to me that soft-cost coverage had not been requested by Seabury on the first policy but that Seabury wanted to obtain soft-cost coverage this time around."

Seabury and Dunfey have offered the deposition of Robert Dunfey, Jr., president of Seabury, in which Dunfey attests that he intended to secure "full protection" for the condominium project. He asserts, further, that he sought protection that would "make Seabury whole" in the event of a fire.

Seabury and Dunfey have also offered the affidavit of Charles Story to show that, while Story may not have *specifically* requested soft costs coverage, he requested "full coverage" under the builder's risk policy, understanding that "full" coverage included soft costs coverage. Story attests that he and Home employees specifically discussed coverage for loss of earnings, which is included in soft costs.

He attests, further, that he expressly requested, on Seabury's behalf, that the policy exclude contractor's equipment and liability coverage, for which Seabury was already covered. He attests that because the policy Home prepared said "not cover-

ed" in these two sections, and did not say "not covered" in the soft costs section, he assumed that the policy included soft costs coverage.

Story vigorously denies ever being asked about or rejecting soft costs coverage by the Home employee who called to take Seabury's policy application. He also denies suggesting, after the fire, that soft cost coverage be added to Seabury's policy.

Seabury and Dunfey have thus not only opposed Home's contentions that no soft costs coverage was requested, but have offered sworn documentation that directly contradicts that offered by Home. On this record, there exists a genuine issue as to whether Seabury, or Dunfey on Seabury's behalf, ever requested or intended to request soft costs coverage. Summary judgment is therefore inappropriate on the issue of the parties' intent.

■ Seabury next claims that Dunfey is an authorized Home agent within the meaning of Maine law, and that Home is therefore bound not only by Dunfey's conduct, but by its admission in this case that it requested soft costs coverage on Seabury's behalf. It cites 24–A M.R.S.A. § 2422(2), which provides that

the authorized agent of an insurer shall be regarded as in the place of the insurer in all respects regarding any insurance effected by him. The insurer is bound by his knowledge of the risk and all matters connected therewith. Omissions and misdescriptions known to the agent shall be regarded as known to the insurer and wavied by it as if noted in the policy.

Home argues that Dunfey was not an authorized Home agent, and was not authorized to bind Home on soft costs coverage when it wrote Seabury's policy. It argues,

---

4. Home has offered the binder itself, which contains no *specific* request for soft costs coverage. It has offered the affidavit of John Condon to suggest that no soft costs coverage was written into Seabury's policy, and that no soft costs coverage premium was assessed. Condon attests, in addition, that "[a]fter receiving the policy from my office, Mr. Story never communicated with me to question the policy form or to request soft costs coverage."

Finally, Home has offered the policy application, completed over the phone *after* the policy was issued. Home alleges that the application was completed by a Home employee according to Mr. Story's instructions. On the application, the Home employee has drawn a line through soft costs coverage. Home argues that this indicates Mr. Story said he did not want soft costs coverage.

on this basis, that if Dunfey is found to have requested soft costs coverage for Seabury, Home is not bound by that request. In the alternative, Home argues that it is not bound by Dunfey's actions or intentions, or by its alleged failure to request soft costs coverage on Seabury's behalf.

Home has introduced its agency agreement with Dunfey, which vests Dunfey with broad agency status. Under the agreement, Dunfey's authority to bind Home is limited to personal property policies under $250,000, and personal automobile policies under $500,000. The agency agreement expressly says "[y]ou may not bind any other insurance or bonds, including new business, except as specifically authorized by us from time-to-time in writing."

Thus, while the agency agreement appears to authorize Dunfey to act on Home's behalf in *some* capacities, it is unclear from the record, taken as a whole, whether Dunfey was authorized to bind Home to the soft costs portion of Seabury's $3.5 million policy without written authorization. The fact that Home has honored the other portions of the policy militates against its claim that Dunfey was not authorized to bind it without express authorization.

Nevertheless, on the issue of soft costs Dunfey's agency agreement does not appear to authorize it to bind Home without written permission. There exists a genuine issue of fact as to whether Dunfey was, in this instance, an authorized Home agent within the meaning of 24–A M.R.S.A. § 2422, and therefore as to whether Home is bound by Dunfey's actions.

### B.

■ Next, Home argues that Seabury has failed to introduce sufficient evidence to support its claims of bad faith. It claims, first, that 24–A M.R.S.A. § 2436[5] provides a remedy to the insured only when a claim is both unpaid *and* undisputed. It claims, in addition, that § 2436 does not address bad faith.

Home claims that it has paid, in good faith, more than $1 million for Seabury's property damage, and has properly disputed Seabury's soft costs claim. It has filed the affidavit of its attorney, Gregory Powell, to support these claims. It alleges, on these bases, that Seabury has no cause of action under § 2436, and is not entitled to collect punitive damages.

Seabury argues that an insurer can avoid the remedies available under § 2436 only by filing a *bona fide*, good faith dispute to an insured's claim. It claims that bad faith disputes filed to delay payment of claims do not toll the application of the statute's remedies.

Seabury claims that Home's dispute was filed in bad faith because it is based on the two defenses discussed above: that Seabury's policy did not cover soft costs and that Dunfey was unauthorized to bind it to soft costs coverage. The Court has already determined, however, that there exist genuine issues of fact as to whether the policy *did* cover soft costs, and as to whether Dunfey *was* authorized to bind Home to soft costs coverage without written authorization. Thus, a timely dispute filed on these bases would not, on this record, be a bad faith dispute.

Seabury has offered no other evidence to support its claims of a bad faith violation of § 2436, or to support its construction that the remedies under § 2436 are tolled only by good faith disputes.[6] It has, therefore, failed to generate a genuine issue of material fact as to Home's bad faith violation of 24–A M.R.S.A. § 2436, and cannot survive summary judgment on this claim.

### C.

Finally, Home claims that even if Seabury can prove bad faith, Maine law does not recognize an independent action for breach of the duty of good faith and fair dealing arising from the processing of an insurance claim. Seabury concedes that Maine's Law Court has not recognized this

---

**5.** *See* n. 2, *supra*.

**6.** Because § 2436 is penal in nature, it must be construed strictly. *Depositors Trust Co. v. Farm Family Life Ins. Co.,* 445 A.2d 1014 (Me.1982).

cause of action. It claims, however, that it is "reasonable to anticipate" that the Law Court *would* recognize the tort if presented with the opportunity.

■ Maine law implies a duty of good faith and fair dealing, at least in the case of contracts governed by the Maine Uniform Commercial Code (UCC). *See Reid v. Key Bank of Southern Maine*, 821 F.2d 9, 12–13 (1st Cir.1987). The Maine Court has indicated that a similar duty is implied in insurance contracts between an insurer and its insured which are not subject to UCC strictures. *Linscott v. State Farm Mutual Automobile Insurance Co.*, 368 A.2d 1161, 1163 (Me.1977) (dictum).

■ The Court notes, however, that even if Maine law recognizes an implied duty of good faith in insurance contracts, the Maine legislature in 1987 amended the insurance code to create a civil remedy for policyholders aggrieved by their insurance company's unreasonable denial of a claim.[7] The civil remedies provision may apply to the claim denial at issue here.[8] Whether it does or not, it can be taken to reflect a legislative intent that bad faith insurance claims be addressed and remedied within statutory guidelines.

It is therefore open to question whether the Maine Law Court will, in the face of this clear legislative pronouncement of the rights and remedies of insured parties, recognize an independent tort action based on bad faith denial of an insurance claim even if an implied duty of good faith exists under such contracts. To do so might well thwart the legislature's intent to craft a comprehensive insurance code, and could subject insurance companies to multiple and inconsistent liability.

Yet it cannot be said to be *indisputably* clear that a right of action will *not* be found, if the implied duty of good faith exists.[9] The Law Court, when presented with the issue, may elect to follow the simple calculus that breach of a legal duty implies a right of action as a remedy. *See* Me. Const. art. I, § 19 ("Every person for an injury done him in his ... property ... shall have remedy by due course of law...."); *Black v. Solmitz*, 409 A.2d 634, 635 (Me.1979) ("[T]here should be no wrong without a remedy.") The issue as to whether such a remedy as a free-standing right of action is available under Maine law on any state of facts remains open and is clearly subject to litigation herein; perhaps to be resolved by certification. *See In Re Richards*, 253 F.Supp. 913 (D.Me.1966).

Summary judgment is not warranted on Count 3 of the Complaint, alleging bad faith, in the doubtful state of the law on these questions.

### III. Conclusion

Accordingly, the Court *ORDERS* that Plaintiff's Motion for Partial Summary Judgment be, and it is hereby *DENIED*. The Court further *ORDERS* that Defendant Home's Motion for Summary Judgment be, and it is hereby, *GRANTED* as to

---

**7.** 24–A M.R.S.A. § 2436–A, effective September 29, 1987, provides, in pertinent part:
   Any person injured by any of the following actions taken by his own insurer may bring a civil action and recover damages, together with costs and disbursements, reasonable attorneys fees and interest on damages at the rate of 1½% per month:
   (A) Knowingly misrepresenting to an insured pertinent facts of policy provisions relating to the coverage at issue;
   (B) Failing to acknowledge and review claims, which may include payment *or denial or a claim,* within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under a policy.
   (Emphasis added).

**8.** 24–A M.R.S.A. § 2436–A became effective September 29, 1987 (Acts 1987, c. 291, § 2). Home

did not finally notify Seabury that it would not honor the soft costs claim until November 13, 1987.

**9.** At least six Maine Superior Court decisions have rejected that conclusion. *Kramer v. State Farm Mutual Auto. Ins. Co.*, No. CV–87–61 (Me. Super.Ct., Sag.Cty., Mar. 2, 1988); *Blouin v. Home Ins. Co.*, No. CV–84–199 (Me.Super.Ct., And.Cty., Sept.4, 1986); *Zelko v. Allstate Ins. Co.*, No. CV–83–233 (Me.Super.Ct., Pen.Cty., Jul. 4, 1984); *Ifill v. State Farm Fire & Casualty Co.*, No. CV–82–177 (Me.Super.Ct., And.Cty., 1982); *Ricci v. Travelers Indemnity Co.*, No. CV–81–547 (Me.Super.Ct., Cum.Cty., Sept. 23, 1981); and *Hall v. Aetna Life & Casualty*, No. CV–79–547 (Me.Super.Ct., And.Cty., 1981).

Count 2 of the Complaint, and *DENIED* in all other respects.