**Lawrence EPSTEIN; John Linder; Jane Rockford, as trustee of the Michael J. Rockford Trust; Maurice Karlin; Ruth Karlin; Beth Ann Karlin; Bert P. Karlin, Plaintiffs–Appellants,**

v.

**MCA, INC.; Matsushita Acquisition Corporation; Matsushita Electric Industrial Co., Ltd.; Matsushita Holding Corporation; Lew Wasserman; Sidney J. Sheinberg, Defendants–Appellees.**

No. 92–55675.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 4, 1996.

Filed Oct. 22, 1997.

Petition for Rehearing Granted June 8, 1998.

Reargued and Resubmitted Aug. 21, 1998.

Opinion Withdrawn June 7, 1999.

Filed June 7, 1999.

. Henry P. Monaghan (argued), Kaufman & Kirby, New York, New York; Roger W. Kirby, Kaufman Malchman Kirby & Squire, New York, New York, for the plaintiffs-appellants.

. Barry R. Ostrager (argued), Simpson Thacher & Bartlett, New York, New York, for the defendants-appellees.

Before: WIGGINS, O'SCANNLAIN, and THOMAS, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Concurrence by Judge WIGGINS; Dissent by Judge THOMAS.

### ORDER

The opinion filed on October 22, 1997, and reported at 126 F.3d 1235 (9th Cir. 1997), is withdrawn, and the attached opinion filed in its place.

### OPINION

O'SCANNLAIN, Circuit Judge:

We reconsider our decision in this case which is still before us on remand from the United States Supreme Court.

In 1992, the United States District Court for the Central District of California entered summary judgment against plaintiffs-appellants ("the Epstein appellants"). In *Epstein v. MCA, Inc.*, 50 F.3d 644 (9th Cir.1995) ("*Epstein I*"), we reversed the District Court, and held, among other rulings, that because it released exclusively federal claims, a Delaware state judgment was not entitled to full faith and credit. In *Matsushita Electric Industrial Co., Ltd. v. Epstein*, 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) ("*Matsushita*"), the Supreme Court reversed our decision in *Epstein I* and remanded for proceedings con-

sistent with its opinion. On remand we again held, in *Epstein v. MCA, Inc.*, 126 F.3d 1235 (9th Cir.1997) ("*Epstein II*"), that the Delaware state judgment was not entitled to full faith and credit. We thereafter granted defendants-appellees' ("Matsushita") petition for rehearing, and the case was reargued. We now withdraw our previous opinion, *Epstein II,* and substitute this opinion for it in all respects.

# I

In 1990, Matsushita made a tender offer for (and subsequently acquired) MCA, Inc. The tender offer precipitated two lawsuits. On September 26, 1990, a Delaware class brought claims in Delaware's Chancery Court asserting that MCA's directors breached their fiduciary duties to shareholders under Delaware law by failing to maximize shareholder value upon a change in corporate control. On December 3, 1990, while the Delaware class action was pending, the Epstein appellants filed this class action in federal district court asserting that Matsushita's tender offer violated Securities and Exchange Commission Rules 10b–3 and 14d–10 promulgated under the Securities Exchange Act of 1934 ("Exchange Act").

On April 16, 1992, after extensive proceedings, the District Court declined to certify the Epstein appellants as a class and entered summary judgment against them. *See* Second Amended Order, No. 90–6451 (C.D. Cal. filed April 16, 1992). On October 22, 1992, while the appeal of the District Court's decision was pending before us, the Delaware class action was settled. The order and final judgment of the Delaware Chancery Court approving the settlement explicitly provided for the release of the federal claims raised in this action. *See In re MCA, Inc. Shareholders Litig.,* 1993 WL 43024 (Del.Ch. Feb.16, 1993). Because the Epstein appellants were members of both the state class and the proposed federal class and did not opt out of the Delaware settlement, Matsushita argued before us on appeal that the Epstein appellants' federal claims were barred by the Delaware judgment under the Full Faith and Credit Act, 28 U.S.C. § 1738.

In *Epstein I,* we rejected Matsushita's argument, and held that the Full Faith and Credit Act did not apply because the Delaware settlement released claims exclusively within the jurisdiction of the federal courts. Addressing the merits, we reversed the district court's entry of summary judgment and denial of class certification.[1] The Supreme Court granted certiorari to decide whether this court could withhold full faith and credit from the Delaware state judgment releasing claims within the exclusive jurisdiction of the federal courts under the Exchange Act.

The Supreme Court held that we could not, concluding that the Delaware judgment was entitled to full faith and credit because (1) under Delaware law, the Epstein appellants were bound by the Delaware class settlement releasing the federal claims, and (2) the grant of exclusive federal jurisdiction in § 27 of the Exchange Act did not partially repeal the Full Faith and Credit Act. The Supreme Court therefore reversed our decision in *Epstein I* and remanded. *See Matsushita,* 516 U.S. at 387, 116 S.Ct. 873.

On remand, a divided panel in *Epstein II* held that despite the Court's holding in *Matsushita,* the Delaware judgment was not entitled to full faith and credit because it violated due process based on the inadequacy of the class representation. The panel therefore reversed and remanded for proceedings consistent with those portions of *Epstein I* that were not reversed by the Supreme Court.

On October 24, 1997, two days after the filing of *Epstein II,* Judge Norris, the

---

1. We affirmed the dismissal of an aiding and abetting claim that was conceded by the Epstein appellants.

author of both *Epstein I* and *Epstein II*, resigned from this court. Matsushita filed a petition for rehearing on November 5, 1997. On January 9, 1998, Judge Thomas was drawn to replace Judge Norris and the reconstituted panel granted the petition for rehearing on June 8, 1998. Following rehearing, we now withdraw our opinion in *Epstein II* and consider anew whether the Epstein appellants are bound by the Delaware judgment.

## II

■ The Epstein appellants assert that, despite the Supreme Court's holding in *Matsushita,* we cannot accord full faith and credit to the Delaware judgment because it violated their due process rights to adequate representation in and judicial supervision of the Delaware proceedings. We are somewhat perplexed by this contention, because *Matsushita*'s holding was explicitly and implicitly premised upon the validity of the Delaware judgment. The Supreme Court stated in *Matsushita* that the Epstein appellant's were "bound ... by the judgment," 516 U.S. at 379, 116 S.Ct. 873, and held that the exclusively federal claims released by that judgment were not exempted from full faith and credit, *see id.* at 385–87, 116 S.Ct. 873. It should go without saying that we are not free to ignore the Court's determinations in *Matsushita* by holding that the Epstein appellants are *not* bound by the judgment.

### A

In *Matsushita,* the Supreme Court commenced its analysis by quoting the Full Faith and Credit Act's mandate "that the 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such

State ... from which they are taken.' " 516 U.S. at 373, 116 S.Ct. 873 (quoting 28 U.S.C. § 1738). Accordingly, the first step of the *Marrese* analysis employed by the Court to determine whether the Delaware judgment could bar the litigation of exclusively federal claims required the Court to "look to the law of the rendering State to ascertain the effect of the judgment." *Matsushita,* 516 U.S. at 375, 116 S.Ct. 873 (citing *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381– 382, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).

Following *Marrese*'s instructions, the Court reviewed Delaware law on the preclusive effect of settlement judgments. The Court's canvas revealed that "[t]he Delaware Supreme Court has [ ] manifested its understanding that when the Court of Chancery approves a global release of claims, its settlement judgment should preclude on-going or future federal court litigation of any released claims." *Id.* at 377, 105 S.Ct. 1327. The Court further noted that under Delaware law, a state court settlement of a class action could release or preclude claims only where that settlement was "determined to be fair and to have met all due process requirements." *Id.* at 377–78, 105 S.Ct. 1327 (quoting *In re MCA, Inc. Shareholders Litig.,* 598 A.2d 687, 691 (Del.Ch.1991)). The Court then concluded that "a Delaware court would afford preclusive effect to the settlement judgment in this case." *Id.* at 378, 116 S.Ct. 873.

The Epstein appellants make much of this conditional language, but it merely reflects that the Court had yet to satisfy itself that the proceedings in Delaware had met all the due process requirements for binding absent class members.[2] Turning to these due process requirements, the Court proceeded to march through Delaware Chancery Rule 23, which is, as the

2. We further believe that the Court's conditional language here and elsewhere, *see Matsushita,* 516 U.S. at 380, 116 S.Ct. 873 (stating that "it *appears* that the settlement judgment would be res judicata under Delaware law") (emphasis added), reflects the

Court's recognition that the Delaware Supreme Court is the ultimate authority on matters of Delaware law. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413 n. 7, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Court noted, "modeled on Federal Rule of Civil Procedure 23." *Id.* at 371, 116 S.Ct. 873.

The Court stated that:

As required by Delaware Court of Chancery Rule 23, *see Prezant v. De Angelis,* 636 A.2d 915, 920 (1994), the Court of Chancery found, and the Delaware Supreme Court affirmed, that the settlement was "fair, reasonable and adequate and in the best interests of the ... Settlement class" and that notice to the class was "in full compliance with ... the requirements of due process." *In re MCA, Inc. Shareholders Litigation,* C.A. No. 11740, 1993 WL 43024 (Feb. 16, 1993).... The Court of Chancery "further determined that the plaintiffs[,] ... as representatives of the Settlement Class, have fairly and adequately protected the interests of the Settlement Class." *In re MCA, Inc. Shareholders Litigation,* supra, reprinted in App. to Pet. for Cert. 73a. *Cf. Phillips Petroleum Co.,* supra, at 812, 105 S.Ct. at 2974 (due process requires "that the named plaintiff at all times adequately represent the interests of the absent class members").

*Id.* at 378–79, 116 S.Ct. 873.

Having satisfied itself that the due process requirements necessary to bind absent class members were met, the Court stated its conclusion:

Respondents do not deny that, as shareholders of MCA's common stock, they were part of the plaintiff class and that they never opted out; *they are bound, then, by the judgment.*

*Id.* at 379, 116 S.Ct. 873 (emphasis added). There was nothing conditional about this holding. The Court then proceeded to the second step of the *Marrese* analysis.

**B**

While the Court's explicit consideration in *Matsushita* of the due process requirements to bind absent class members admittedly did not include an express statement that the Delaware judgment in question did not violate due process, that conclusion was logically necessary to the Court's holding. In *Kremer v. Chemical Construction Corp.,* the Supreme Court made plain that "[a] State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Thus in *Matsushita,* any resolution of the preclusive effect to be afforded under Delaware law to the Delaware judgment necessarily entailed a determination of whether the judgment was "constitutionally infirm." If the judgment were constitutionally infirm, the judgment could not be binding under Delaware law, nor could a federal court accord it full faith and credit. The Supreme Court's holding in *Matsushita* that under Delaware law the Epstein appellants were "bound, then, by the judgment," *Matsushita,* 516 U.S. at 379, 116 S.Ct. 873, was thus necessarily premised upon the constitutional validity of the Delaware judgment.[3]

**3.** The Epstein appellants themselves recognize and employ similar logic in their papers. Matsushita cited *Snider v. City Of Excelsior Springs, Missouri,* 154 F.3d 809 (8th Cir. 1998), as supplemental authority demonstrating that the broad collateral review sought by the Epstein appellants is also precluded by the *Rooker–Feldman* doctrine. In response, the Epstein appellants asserted that the Court's decision in *Matsushita* necessarily subsumed a determination that the *Rooker–Feldman* doctrine was inapplicable and federal jurisdiction existed, because *Rooker–Feld-* *man* limits the subject matter jurisdiction of the lower federal courts and thus must be addressed prior to any discussion of preclusion law. (*See* Plaintiffs–Appellants' Rule 28(j) Submission of Sept. 15, 1998, at 1–2.) In light of this argument, the Epstein appellants should similarly recognize that the Court's determination that they were bound by the Delaware judgment necessarily subsumed a determination that the Delaware judgment was constitutionally valid, because states cannot give preclusive effect to constitutionally infirm judgments.

It is further worth noting that if, as the Epstein appellants contend, the Delaware judgment violated due process and was invalid, the Court would have had no reason to proceed to step two of the *Marrese* analysis. The Court stated that it would proceed to step two only "[i]f state law indicates that the particular claim or issue would be barred from litigation in a court of that state." *Id.* at 375, 105 S.Ct. 1327. Delaware law would bar the federal claims at issue only if the state settlement was "determined to be fair and to have met all due process requirements." *In re MCA, Inc. Shareholders Litig.*, 598 A.2d 687, 691 (1991). Thus, if the Delaware judgment had not met all due process requirements, the question decided by *Matsushita* would not have been reached, or even presented.[4]

In fact, if the Epstein appellants' contention that the Delaware judgment is constitutionally infirm were true, *Matsushita* would be an advisory opinion. The Court's holding would have answered the purely hypothetical question of the full faith and credit to be accorded a *valid* state judgment releasing exclusively federal claims within the Exchange Act, regardless of the fact that no such valid judgment was before the Court. We will not presume that the Court violated Article III by rendering an advisory opinion. *See, e.g., Mills v. Rogers*, 457 U.S. 291, 305, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982) (declining to consider merely hypothetical issues in light of the prohibition against advisory opinions); *Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (noting the Article III prohibition against advisory opinions).

### C

The Epstein appellants assert, however, that the opinion explicitly left the validity of the judgment open, pointing to statements by Justice Ginsburg in her dissent, and by the Court in footnote five. *See Matsushita*, 516 U.S. at 379 n. 5, 116 S.Ct. 873. We are not persuaded.

The Epstein appellants rely heavily on Justice Ginsburg's statement that because "the Ninth Circuit decided the case without reaching the due process check on the full faith and credit obligation, that inquiry remains open for consideration on remand." *Id.* at 389, 116 S.Ct. 873. This belief, however, was not shared by the majority.[5] As Justice Stevens stated in his dissent, he could "join neither [the Court's determination of Delaware preclusion law] nor the Court's judgment" because he agreed with Justice Ginsburg "that the Ninth Circuit remains free to consider whether Delaware courts fully and fairly litigated the adequacy of class representation." *Id.* at 387, 116 S.Ct. 873. This statement demonstrates that the Court's determination of the preclusive effect of the judgment under Delaware law did not leave consideration of the adequacy of representation open on remand.

Justice Ginsburg similarly stated that she concurred only "to the extent that [the Court's judgment] remands the case to the Ninth Circuit," because she objected to the Court's consideration of the content of Delaware preclusion law. *Matsushita*, 516 U.S. at 388, 116 S.Ct. 873. Thus her statement that the due process issue "remains open for consideration on remand," *id.* at 389, 116 S.Ct. 873, is properly viewed as part of her dissent, and has no bearing on whether *Matsushita*'s holding was premised on the validity of the Delaware judgment. Moreover, Justice Ginsburg dis-

---

4. Again, this logic should be familiar to the Epstein appellants. Just as the Epstein appellants asserted that consideration of a court's jurisdiction under *Rooker–Feldman* is logically prior to consideration of preclusion law, (*see* Plaintiffs–Appellants' Rule 28(j) Submission of Sept. 15, 1998, at 1–2), consideration of the validity of a state judgment under step one of the *Marrese* analysis is logically prior

to consideration under step two of whether an exception to full faith and credit exists.

5. Which had, as noted previously, seemingly just performed this "due process check" in considering the preclusive effect of the judgment under Delaware law.

sented because she evidently believed that the Court should not have endeavored "to speak the first word on the content of Delaware preclusion law." *Id.* at 388, 116 S.Ct. 873. This statement confirms that the Court did determine the content of Delaware preclusion law, which necessarily included a determination of the judgment's constitutional validity. *See Kremer,* 456 U.S. at 482, 102 S.Ct. 1883.

The Epstein appellants also rely on the Court's now famous footnote five, in which the Court declined to address the Epstein appellants' contention "that the settlement proceedings did not satisfy due process because the class was inadequately represented." *Id.* at 379 n. 5, 116 S.Ct. 873. They ignore, however, the fact that the Court's statements in footnote five were in reference to a due process challenge "[a] part [sic] from any discussion of Delaware law." *Id.* The footnote does not indicate that the Court had not considered *any* due process concerns, nor would any such reading of the footnote be tenable in the face of the Court's explicit contemplation of the due process requirements to bind absent class members under Delaware law. Nor does the footnote in any way indicate that the Delaware courts had not resolved the issue, or that this determination would not be binding upon the Epstein appellants. Instead, the footnote implies that this determination would be binding by stating that the Epstein appellants "make this claim in spite of the Chancery Court's express ruling, following argument on the issue, that the class representatives fairly and adequately protected the interests of the class." *Id.*

Moreover, that the Court declined to address a due process "claim ... outside the scope of the question presented," *id.,* did not necessarily leave the due process issues the Epstein appellants seek to raise open on remand. While the Court may not have wished to analyze independently every due process challenge to the Delaware judgment available under *Kremer,* its statement in footnote five did not preclude the implicit resolution of such a challenge by the Court's opinion, particularly where the issue the Epstein appellants sought to raise was necessarily intertwined with the Court's holding and discussion of other issues.

We further note that where the Court leaves an issue open on remand, it often expressly states that it has done so. *See, e.g., United States v. O'Hagan,* 521 U.S. 642, 678, 117 S.Ct. 2199, 2220, 138 L.Ed.2d 724 (1997) (stating that petitioner's "other arguments ... remain open for consideration on remand"); *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432 (1997) ("We also leave consideration of other issues that may remain open to the Court of Appeals on remand."). Such express statements in the Court's opinions are obviously of far greater weight than a statement in dissent such as Justice Ginsburg's, and are different in kind from the *Matsushita* majority's statement in footnote five merely declining independently to address the Epstein appellants' due process claim.

### III

Apart from any statements in *Matsushita* that the Epstein appellants believe explicitly left open their due process objections on remand, the Epstein appellants assert that *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), and *Kremer* create a largely unfettered right to challenge collaterally the adequacy of representation in class actions.[6]

---

6. We note that Delaware law provides no basis for the collateral review that the Epstein appellants seek. As the Court stated in *Matsushita,* "a Delaware court would afford preclusive effect to the settlement judgment in this case." 516 U.S. at 378, 116 S.Ct. 873.

The Delaware Supreme Court has explained that under Delaware law:

Class members ... will, in all cases, have their interests protected by the requirement that their claims cannot be compromised without ... a judicial determination that

## A

*Shutts* does not support the broad collateral review that the Epstein appellants seek. In *Shutts,* the Court identified various procedural safeguards that are necessary to bind absent class members, including notice, the opportunity to be heard, the opportunity to opt out, and adequate representation. 472 U.S. at 812, 105 S.Ct. 2965. However, nowhere in *Shutts* did the Court state or imply that where the certifying court makes a determination of the adequacy of representation in accord with *Shutts,* this determination is subject to collateral review. *Shutts* in fact implies that such review is unwarranted by emphasizing that the certifying court is charged with protecting the interests of the absent class members. *See id.* at 809, 105 S.Ct. 2965.

Simply put, the absent class members' due process right to adequate representation is protected not by collateral review, but by the certifying court initially, and thereafter by appeal within the state system and by direct review in the United States Supreme Court. *See, e.g., Grimes v. Vitalink Communications Corp.,* 17 F.3d 1553, 1558 (3rd Cir.1994) (refusing to allow absent class members collaterally to challenge adequacy of representation because the opportunity to challenge that determination by appeal to Delaware Supreme Court, and thereafter to the United States Supreme Court, "granted all the process that was due"); *Nottingham Partners v. Trans–Lux Corp.,* 925 F.2d 29, 33 (1st Cir.1991) (holding that so long as procedural safeguards were employed, objections to the determinations of a certifying court had to be remedied on appeal to the

the Rule 23 criteria have been satisfied.... *Defendants will be protected from a possible collateral attack on the validity of the settlement by a class member claiming the settlement did not meet the requirements of Rule 23.* This protection will help insure that the final release sought by defendants in settlements is indeed final.
*Prezant,* 636 A.2d at 925–26 (emphasis added).

state supreme court or the United States Supreme Court, and not by recourse to the "federal courts in the vain pursuit of back-door relief").

■ As the Court stated in *Hansberry v. Lee,* "there has been a failure of due process only in those cases where it cannot be said that *the procedure adopted,* fairly insures the protection of the interests of absent parties who are to be bound by it." 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (emphasis added). Due process requires that an absent class member's right to adequate representation be protected by the adoption of the appropriate procedures by the certifying court and by the courts that review its determinations; due process does not require collateral second-guessing of those determinations and that review.

## B

*Kremer* does not indicate otherwise. As we have noted previously, *Kremer* held that neither state nor federal courts are required to give full faith and credit to a constitutionally infirm judgment. *See Kremer,* 456 U.S. at 482, 102 S.Ct. 1883. The extent of collateral review is, however, limited.

Kremer merely recognized that a judgment is not entitled to full faith and credit "if there is reason to doubt the quality, extensiveness, or fairness of *procedures* followed in prior litigation." *Id.* at 481, 102 S.Ct. 1883 (quoting *Montana v. United States,* 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)) (emphasis added). Limited collateral review would be

As noted by the Court in *Matsushita,* the Delaware Chancery Court made the requisite findings, *see* 516 U.S. at 378–79, 116 S.Ct. 873, thus under *Prezant,* Matsushita is protected from a collateral attack on the validity of the settlement. *See also Hynson v. Drummond Coal Co., Inc.,* 1997 WL 741507, \*1–2 (Del.Ch. Nov.24, 1997) (rejecting class members' attempt to collaterally attack a Delaware judgment on due process grounds under *Shutts* ).

appropriate, therefore, to consider whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a "full and fair opportunity" to litigate the claim or issue. *Id.* at 480, 102 S.Ct. 1883. This review would not, however, include reconsideration of the merits of the claim or issue, *see id.* at 483–85, 102 S.Ct. 1883 (declining to reexamine the facts underlying or the merits of Kremer's claim, and instead examining the procedures provided), and such a challenge would most likely fail because "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Id.* at 481, 102 S.Ct. 1883.

## C

*Matsushita* itself indicates that broad collateral review of the adequacy of representation (or of the other due process requirements for binding absent class members) is not available. *Matsushita* made plain that class action judgments are accorded full faith and credit like other judgments:

> That the judgment at issue is the result of a class action, rather than a suit brought by an individual, does not undermine the initial applicability of § 1738. The judgment of a state court in a class action is plainly the product of a "judicial proceeding" within the meaning of § 1738. Therefore, a judgment entered in a class action, like any other judgment entered in a state judicial proceeding, is presumptively entitled to full faith and credit under the express terms of the Act.

*Matsushita,* 516 U.S. at 373–74, 116 S.Ct. 873 (citations omitted).

The Court did, of course, address the additional due process requirements for binding absent class members, stating, by way of example, that "due process for class action plaintiffs requires 'notice plus an opportunity to be heard and participate in the litigation,'" and "'that the named plaintiff at all times adequately represent the interests of the absent class members.'" *Id.* at 378–79, 116 S.Ct. 873 (quoting *Shutts,* 472 U.S. at 812, 105 S.Ct. 2965). The Court, however, satisfied itself that these requirements had been met *by referencing the Delaware courts' findings on these matters,* rather than by independently determining whether the requirements were met. *See id.*[7]

After this analysis, the Court stated the seemingly uncontroversial proposition that:

> Under Delaware Rule 23, as under Federal Rule of Civil Procedure 23, "[a]ll members of the class, whether of a plaintiff or a defendant class, are bound by the judgment entered in the action unless, in a Rule 23(b)(3) action, they make a timely election for exclusion." 2 H. Newberg, *Class Actions* § 2755, p. 1224 (1977).

*Id.* at 379, 116 S.Ct. 873. The Court also cited *Cooper v. Federal Reserve Bank of Richmond* for the proposition that "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." 467 U.S. 867, 874, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984).

The Court's statements in no way imply that a class member who fails to opt out is not bound until collateral review of the adequacy of representation reveals that due process has been satisfied. Nor is there any indication that a "properly entertained" class action is other than one in which a certifying court employs the appropriate procedures to determine that the due process requirements embodied in Rule 23 have been met. Any such implication would be belied by the Court's analy-

---

**7.** We further note that the Court's citation of *Shutts,* immediately after referencing the findings of the Delaware courts' regarding the due process requirements, belies the Epstein appellants' assertion that *Shutts* supports collateral review of these determinations.

sis of the issue because these statements followed on the heels of the Court's review of the Delaware courts' determinations that the Rule 23 requirements were satisfied.

Even footnote five, so heavily relied upon by the Epstein appellants, makes the same point. There, the Court specifically noted that the Epstein appellants sought to challenge collaterally the adequacy of representation "in spite of the Chancery Court's express ruling, following argument on the issue, that the class representatives fairly and adequately protected the interests of the class." *Matsushita*, 516 U.S. at 379 n. 5, 116 S.Ct. 873. The Court then cited *Prezant v. De Angelis* for the proposition that the "constitutional requirement [of adequacy of representation] is embodied in [Delaware] Rule 23(a)(4)." *Id.* (alterations in the original). These statements indicated that the Epstein appellants' challenge to the adequacy of representation in the Delaware proceedings was answered by specific reference to the findings made on the issue in those proceedings.

### IV

For the foregoing reasons, the Delaware judgment was not constitutionally infirm and must be accorded full faith and credit. The district court's decision of April 16, 1992 is

AFFIRMED.

WIGGINS, Circuit Judge, concurring:

I concur in the result of Judge O'Scannlain's majority opinion. I write separately to explain why I changed my vote in this appeal.

The long history of this case evinces the complexity of the issues involved. In our original disposition, we found that the Delaware judgment was not a bar to further prosecution of the federal action under the

Full Faith and Credit Act, 28 U.S.C. § 1738. *See Epstein v. MCA, Inc.,* 50 F.3d 644 (9th Cir.1995). The Supreme Court reversed, concluding that the Delaware judgment was entitled to full faith and credit even if it released claims within the exclusive jurisdiction of the federal courts. *See Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996)(*"Matsushita "*). Following remand, we were presented with the issue that is the subject of this appeal.

After our initial consideration of this appeal, I joined Judge Norris' well-written opinion. *See Epstein v. MCA, Inc.,* 126 F.3d 1235 (9th Cir.1997). We found that the adequacy of representation issue was left open by the Supreme Court and was not fully and fairly litigated in state court. *See id.* at 1237–48. Proceeding to the merits of the adequacy of representation issue, the opinion convincingly concluded that Delaware counsel provided inadequate representation: "This was not merely 'inadequate' representation, it was hostile representation that served the interests of counsel in getting a fee, but did not serve the interests of the MCA shareholders in getting a settlement based upon a thorough and fair assessment of their Exchange Act claims." *Id.* at 1255.

I remain troubled by the substance of the Delaware settlement. Soon after the opinion was filed, however, I began to have grave doubts about the conclusion that the adequacy of representation issue was not fully and fairly litigated in the Delaware courts. It is this issue that led me to change my vote.

I now believe that, while the Supreme Court did not conclusively resolve the due process issue before the remand, it did send unmistakable signals on that very issue. In three separate passages, the Court indicated that the Delaware courts likely had already conclusively resolved the due process issue.[1] Our original ma-

---

1. First, in Part I of it opinion, as it described the procedural posture of the case it stated

that "[a]fter argument from several objectors, the [Chancery] court found the class represen-

jority disposition in this appeal did not give sufficient weight to these admonitions.

The Supreme Court's conclusion is clearly supported by the record. One of the objectors, William Krupman, explicitly opposed the proposed settlement because "the purported class representatives ... had proposed a settlement that benefitted no one but their own attorneys. *They did not provide adequate representation to the class.*" Affidavit of William A Krupman at 2–3, *In re MCA, Inc. Shareholders Litig.*, Civ. A. No. 11740, 1993 WL 43024 (Del.Ch. Feb.16, 1993) (emphasis added). In considering Krupman's objection, the Chancery Court felt that his objection concerning the adequacy of the class representatives' representation of the class members was similar to the objection raised by another objector, Pamela Minton de Ruiz, who objected to the settlement "on the basis that the settlement is collusive." *In re MCA, Inc. Shareholders Litig.* 1993 WL 43024 *3. The Chancery Court nonetheless approved the settlement because the settlement was "in the best interest of the class," notwithstanding these objections to the adequacy of the class representatives' representation. *Id.*

Because the adequacy of representation issue was fully and fairly litigated and necessarily decided in the Chancery Court, the Delaware courts would give preclusive effect to that determination. *See Messick v. Star Enter.*, 655 A.2d 1209, 1211 (Del. 1995). The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that we "treat a state court judgment with the same re-

spect that it would receive in the courts of the rendering state." *Matsushita*, 516 U.S. at 373, 116 S.Ct. 873. As such, we are required to give preclusive effect to the Chancery Court's judgment that class representation was adequate irrespective of whether we agree with that determination. I therefore concur.

THOMAS, Circuit Judge, dissenting:

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) heralded a new era of judicial scrutiny of class action certification and settlement. The majority opinion marks a significant retreat from that philosophy, sanctioning a class settlement obtained without any record evidence that the class representatives were even members of the class. Because the Delaware judgment extinguished the rights of absent class members without affording them due process of law, I respectfully dissent.[1]

I

Before hedging its bet by reaching the merits, the majority first concludes that we are precluded from deciding the due process questions presented to us because the Supreme Court has already done so. The opening passage of *Matsushita Electric Industrial Co., Ltd. v. Epstein,* 516 U.S. 367, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) belies this:

This case presents a question whether a federal court may withhold full faith and credit from a state-court judgment ap-

tation adequate...." *Matsushita*, 516 U.S. at 371, 116 S.Ct. 873. Later, in explaining why it believed that the Delaware courts would afford preclusive effect to the settlement judgment, the Supreme Court explained that "[t]he Court of Chancery 'further determined that the plaintiffs[,] ... as representatives of the Settlement Class, have fairly and adequately protected the interests of the Settlement Class.'" *Id.* at 378, 116 S.Ct. 873 (quoting Order and Final Judgment at 2, *In re MCA, Inc. Shareholders Litigation,* Civ. A. No. 11740, 1993 WL 43024 (Del.Ch. Feb.16, 1993))(internal quotation marks omitted). Finally, the Court expressed its astonishment at

plaintiffs' decision to assert their due process claim "in spite of the Chancery Court's express ruling, following argument on the issue, that the class representatives fairly and adequately protected the interests of the class." *Id.* at 379 n. 5, 116 S.Ct. 873.

**1.** Insofar as is possible, I shall not repeat Judge Norris's forceful analysis, as detailed in the panel opinion on remand. *See Epstein v. MCA, Inc.,* 126 F.3d 1235 (9th Cir.1997). It demands an independent and careful examination and is, in my view, dispositive.

proving a class-action settlement simply because the settlement releases claims within the exclusive jurisdiction of the federal courts.

*Id.* at 369, 116 S.Ct. 873.

The Court further explained:

We need not address the due process claim [of inadequate representation] ... because it is outside the scope of the question presented in this Court. *See Yee v. Escondido*, 503 U.S. 519, 533, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). While it is true that a respondent may defend a judgment on alternative grounds, we generally do not address arguments that were not the basis for the decision below. *See Peralta v. Heights Medical Center*, Inc. 485 U.S. 80, 86, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988).

*Id.* at 379 n. 5, 116 S.Ct. 873 (1996).

If the majority's recognition of the scope of its holding were not already plain, Justice Ginsburg's partial concurrence makes it pellucid:

Although the Ninth Circuit decided the case without reaching the due process check on the full faith and credit obligation, that inquiry remains open for consideration on remand.

*Id.* at 389, 116 S.Ct. 873.

The nuances that the majority strains to draw from the opinion simply cannot bear the weight placed on them. There is nothing in the opinion that relieves us of our responsibility to examine the merits of the due process argument fully and fairly. Indeed, if any unmistakable signal were sent by the opinion, it was to do just that.

## II

Judgments binding absent litigants in class action suits are an exception to the general rule that one is not bound by a judgment in personam in a litigation to which he or she is not a party. *See Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Absent class members may be bound by the judgment if they have, in fact, been adequately represented by parties who are present. *Id.* at 42–43, 61 S.Ct. 115. Due process requires that the procedure employed to reach a binding judgment "fairly insures the protection of the interests of absent parties who are to be bound by it." *Id.* at 42, 61 S.Ct. 115.

This is, in the words of the *Hansberry* court almost sixty years ago, a "familiar doctrine." *Id.* Yet its import seems lost in this case. In order for absent class members to have "adequate representation" within the meaning of the Due Process Clause, the class must be free of structural conflict. Although analyzed in the context of Fed.R.Civ.P. 23, this proposition was central to the seminal analysis in *Amchem.* 521 U.S. at 625–28, 117 S.Ct. 2231. In a class settlement, there must be "structural assurance of fair and adequate representation for the diverse groups and individuals affected." *Id.* at 627, 117 S.Ct. 2231. The class representative "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).

In the case at hand, there were three different types of shareholders who were part of the class: (a) those who traded on the open market; (b) those who tendered their shares; and (c) those who received spin-off shares. In addition, there were differences among the class members as to the legal theories available. The interests of the Epstein plaintiffs in advancing the federal claims were directly antagonistic to those of the Delaware class representatives, who were precluded by federal securities law from asserting those claims in state court. By the time settlement occurred, the statute of limitations prevented the Delaware class from litigating the federal claims in any court. Thus, there were irreconcilable differences in claims and damages among the class members. These structural conflicts should have act-

uated an inquiry by the Delaware Vice–Chancellor, and should have resulted in the creation of sub-classes to assure the adequate representation of absent class members.

The conflict prior to settlement approval was palpable. Because they could not assert federal causes of action, those claims were of no value to the class representatives and their counsel except as a bargaining chip to enhance the value of their state claims. Indeed, settlement of the federal action was the only method by which the Delaware class could receive any money from the federal claims. Thus, it was plainly in the best interest of class representatives to settle the federal claims at any price. Class representatives had absolutely no incentive to obtain fair valuation of the federal claims, because of their inability to assert the claims.

The divergence of class interests quickly manifested itself. While Delaware counsel was admitting to the Chancery Court that they had reviewed the Wasserman claim "relatively quickly" and in the complete absence of discovery, before concluding that the claim was "frivolous," the MCA shareholders were extensively litigating that very claim in federal district court in this Circuit. And while the Delaware counsel was arguing before the Chancery Court that the Ninth Circuit was "unlikely" to overturn the district court's dismissal of the Wasserman claim, the MCA shareholders were in the process of successfully appealing that decision before this court. In addition to the inadequate representation of the Wasserman issue, it is also noteworthy that there is not a single mention of the $21 million payment to Sheinberg in the Delaware counsel's memoranda or arguments to the Chancery Court, although it is clear that Delaware

counsel was aware of this claim, which had a potential value of $17.80 per share.

"[A]dequate representation ... depends on ... an absence of antagonism." *Brown v. Ticor Title Insurance Co.*, 982 F.2d 386, 390 (9th Cir.1992). In this case, the antagonistic interests, injury and claims among the class members resulted in significant structural conflicts. Because these conflicts were unresolved, the class representation was constitutionally infirm and cannot bind absent class members.

In addition, the actual representation provided by Delaware class counsel was inadequate for reasons persuasively detailed in Judge Norris's opinion on remand. *See Epstein*, 126 F.3d at 1251–55. Class counsel did not investigate or properly evaluate the federal claims. Class counsel provided a misleading and incorrect analysis of the claims to the Chancery Court. The interests of the Epstein plaintiffs were not represented adequately by class counsel; indeed, their interests were undermined by the antagonistic strategy of class counsel.

Finally, there is no record evidence that the class representatives were even members of the putative class. A non-waivable prerequisite to approval of a class settlement binding absent class members is that the class representative be a member of the class. *See East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) ("As this Court has repeatedly held, a class representative must be part of the class...."). The best argument that the class representatives could offer was that such an allegation was contained in the complaint, that there were a large number of law firms involved and that the settlement was accepted by class members.[2]

---

**2.** The class representatives did not reply to this charge in their briefs. At oral argument, the following colloquy occurred:

Question: Where is there evidence in the record that any of the named representatives were actually members of the class?

Answer: In the Delaware proceeding, there were twelve different class representatives, represented by twenty different law firms and all of them were possessed of the state and federal claims that were resolved in the Delaware action.

None of this, of course, comes close to being record evidence. This explanation can be credited only if one believes that representational adequacy or adherence to procedural due process may be established by circumstantial evidence.

The majority decision correctly observes that *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), enumerated "various procedural safeguards that are necessary to bind absent class members." In fact, *Shutts* specifically indicates that "the Due Process Clause of course requires that the named plaintiff at all times adequately represents the interests of the absent class members." 472 U.S. at 812, 105 S.Ct. 2965 (*citing Hansberry v. Lee*, 311 U.S. 32, 42–43, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). The litigation leading up to the Delaware settlement thus violated the "minimal procedural due process protection" due to the Epstein plaintiffs: adequate representation "at all times."

"[I]f the plaintiff was not adequately represented in the prior action, or there was a denial of due process, then the prior decision has no preclusive effect." *Brown*, 982 F.2d at 386. Thus, the Epstein plaintiffs are entitled as a matter of federal law to assert their claims in this action.

### III

In addition to federal due process concerns, the Delaware Supreme Court's own interpretation of Delaware Chancery Courts Rule 23, as articulated in *Prezant v. De Angelis*, 636 A.2d 915 (Del.1994), requires us to address the Epstein plaintiffs' collateral attack of this settlement on the grounds of inadequate representation. Under Delaware law, issue preclusion attaches only when a question of fact essential to the judgment actually has been litigated and determined by a valid and final judgment. *Messick v. Star Enterprise*, 655 A.2d 1209, 1211 (Del.1995); *Orange Bowl Corp. v. Jones*, 1986 WL 13095, at *2 (Del.Super.1986); *Evans v. Frank E. Basil, Inc.*, 1986 WL 3973, at *2 (Del.Super.1986). The Delaware record shows that the issue of adequacy of representation was not litigated during the settlement proceedings.

The notice to the class members regarding the settlement hearing did not indicate that the issue of adequacy of representation, either by class representative or by class counsel, would be addressed.

Perhaps as a consequence of the absence of notice, the four objectors who participated in the Delaware proceedings did not litigate the question of the adequacy of representation. In addressing the concerns that were litigated by the objectors, the Delaware Chancery Court first determined that the fact that few small shareholders would actually opt out of the settlement, as was their right, did not undermine the validity of the settlement agreement. *In re MCA, Inc. Shareholders Litigation*, 1993 WL 43024, at *4. Second, it determined that it did not need to await the Ninth Circuit's appellate decision in the *Epstein* matter in order to approve the settlement. *Id.* at *5. Third, the Chancery Court concluded that those shareholders who received delayed notice had assumed the risk of such delays in holding their shares under a "street name." *Id.* And finally, it determined that there was insufficient evidence to support the objectors' claim that the agreement was a collusive

---

Question: Is your answer basically that there is nothing of evidence in the record, but everyone was on notice and you are relying on that?

Answer: I'm certainly relying on the fact that a notice went to every single class member outlining the settlement, the pendency of the federal action, the pendency of state action, what each class member would receive and what each member would forfeit, and I'm relying on the fact that the settlement proceeds which were accepted by all class members, including the Epstein plaintiffs, were only paid to shareholders who tendered pursuant to the tender offer and I'm relying on the fact that the Delaware complaint was brought on behalf of all MCA shareholders.

means of obtaining settlement of the federal claims. *Id.*

Of these four explicit findings, it is clear that only the second and fourth claim are even tangentially relevant to the claims raised by the Epstein plaintiffs before this court today. The second finding indicated that the valuation of the state claims were not dependant upon the resolution of the federal matter. But the Chancery Court did not assert that the plaintiffs raising the federal claims were adequately represented in the Delaware action. The fourth finding simply makes clear the fact that there was no collusive settlement "deal" between the plaintiffs and attorneys on both sides of the state court matter. The fact that there was no finding of wrongdoing certainly does not preclude a finding that the federal plaintiffs were inadequately represented by the settling class.

In short, none of the Chancery Court's findings address the claim of the plaintiffs before this court today: namely, that the federal plaintiffs were inadequately represented before the Delaware court, and that, consequently, a decision to bind them to the terms of the settlement would violate their rights to due process.

The Epstein plaintiffs correctly argue that to be bound by the settlement decision they are entitled under Delaware law to specific findings that they were adequately represented in the Delaware Chancery Court. Such findings are required in order to bind the federal litigants to the settlement terms. In *Prezant,* 636 A.2d at 924, the Delaware Supreme Court explicitly held that a Court of Chancery is required to "articulate on the record its findings regarding the satisfaction of the Rule 23 criteria and supporting reasoning." Yet the statement offered by the Delaware Chancery Court asserting that the plaintiffs in the action "fairly and adequately protected the interests of the Settlement Class" offers no "supporting reasoning" aside from that offered to address the challenges raised by the four objectors. No findings exist in the Chancery Court's decision that would indicate that the representation of the absent federal plaintiffs was adequate, because the matter was never actually litigated before that court.

Thus, while the Supreme Court decision in *Matsushita* makes it clear that the objectors will be bound by the judgment of the Delaware court with respect to the matters litigated,[3] the Delaware court's decision cannot be read to bind those whose claims were simply never represented before it. The individual objectors who voluntarily appeared at the fairness hearing were not authorized by the absent class members to represent their interests, nor were they certified by the state to do so. Their appearance at the hearing could therefore not bind other parties with respect to the issue of adequacy of representation.[4] Thus, the majority's determination today also runs against the settled law of Delaware.

## IV

Providing the Epstein plaintiffs with the opportunity to raise their due process claims does not, as the majority claims, result in the "collateral second guessing" of the determinations and review of the

3. Thus, interpreting the *Matsushita* decision to leave the Epstein plaintiffs' due process claim open for determination on remand does not, as the majority contends, render *Matsushita* an "advisory decision." On the contrary, the Court's decision makes it clear that all participants in the Delaware action will be bound by the judgment in spite of the exclusively federal nature of any claims they sought to raise elsewhere.

4. This conclusion does not undermine the finality of a class action settlement to any degree greater than that already permissible under the law. In *Prezant,* the Delaware Supreme Court pointed out that prudent class action defendants can foreclose subsequent collateral action absolutely by asking for a judicial finding, supported through reasoning and evidence, that all plaintiffs' "due process right to adequate representation has been satisfied." 636 A.2d at 925–26. Such a finding simply was not made in this case.

Delaware courts. Those determinations are valid, and, to the extent that they comply with due process protections afforded by the Constitution, they are binding upon this court. Thus, the result originally reached by the panel on remand was not violative of cooperative federalism or comity. The majority today gives license to those who would run to a favorable and remote state court to obtain settlements premised on bargain-basement valuations of federal claims, even when those claims clearly predominate over potential state causes of action. This result must be especially discouraging to responsible law firms specializing in class action suits, who assiduously and carefully construct subclasses to assure adequate representation of diverse interests, even at the expense of their own fees.

The Epstein plaintiffs seek to raise claims that received neither determination nor review in the Delaware courts. Structural conflicts of interest precluded adequate representation of absent class members. The Epstein plaintiffs were not adequately represented in the Delaware state court proceedings by either the class representatives or the objectors, and their claim was never litigated in Delaware state court. In denying them the right to bring their meritorious federal claims before us, we deny them due process of law. We also significantly diminish the proper oversight role of the judiciary over class action settlements.

I respectfully dissent.