Quinn-Beintnall, C.J.
Nobl Park, L.L.C. of Vancouver, an apartment complex owner in Clark County, appeals the trial court’s summary judgment order dismissing its claims against suppliers of defective polybutylene plumbing. The *833 trial court ruled that a prior Tennessee class action settlement agreement entered in Cox v. Shell Oil Co., No. 18844, 1995 WL 775363 (Tenn. Ch. Nov. 17, 1995), precluded Nobl Park from suing Shell Oil Company dba Shell Chemical Company (Shell) and Hoechst Celanese Corporation (Celanese). The court also dismissed Nobl Park’s “economic damages” claims against Familian Northwest, Inc. (Fa-milian) and Keller Supply Co. (Keller).
On appeal, Nobl Park argues that due process considerations exempt it from the Cox settlement. But because Nobl Park purchased the apartment complex with notice of its plumbing defects and of Section 10.6 of the Cox Settlement Agreement it is not exempt as an innocent initial purchaser. Moreover, Nobl Park’s damages resulting from the faulty plumbing were economic losses of a contractual nature not recoverable under the Washington products liability act (WPLA). Thus, summary judgment was proper and we affirm.
FACTS
During the 1970s, the U.S. Brass Corporation manufactured polybutylene plumbing. Shell and Celanese supplied raw materials to manufacturers of polybutylene plumbing. In 1978, Celanese began studying a corrosion problem occurring in the residential plumbing fittings. In a 1979 study, Celanese revealed that zinc chloride in the hot water pipes caused the corrosion. In 1981, Celanese issued a recommendation that polybutylene plumbing exposure to chlorine not exceed one part per million in these pipes. But two years later, a 1983 Shell marketing report expressed confidence in the polybutylene plumbing and blamed the corrosion in pipes of several Texas apartment complexes on poor installation practices. Despite the continuing poly-butylene plumbing failures, Celanese continued to manufacture polybutylene plumbing although it listed residential use under “non-recommended conditions.” 4 Clerk’s Papers (CP) at 683. Further studies confirmed that expo *834 sure to chlorine in hot water was a primary cause of the pipe corrosion.
In September 1993, Robert Beeman filed the first class action lawsuit in Harris County, Texas, for damages to his home from failing polybutylene plumbing. Tina M. Cox filed a similar suit in Tennessee. Counsel for Beeman and Cox collaborated to prosecute the cases. The Obion County Chancery Court in Union City, Tennessee, joined actions from several jurisdictions and held a fairness hearing for a possible settlement. In July 1995, the parties agreed to a settlement agreement under Cox (hereinafter Cox Settlement). The Cox Settlement included several provisions for the class, notably: free replacement of polybutylene plumbing installed after January 1, 1978; reimbursement of expenses; unlimited funding potential by the defendants; and provisions requiring notice of the plumbing deficiency every three years until 2009. Notices of the class action and the proposed settlement were published in several major media outlets, including newspapers, magazines, and television networks. The court defined the class as:
All persons and entities that (1) own real property or structures in the United States in which there was installed between January 1, 1978 and July 31, 1995, polybutylene plumbing with acetal insert or metal insert fittings or a polybutylene yard service line; (2) own or previously owned such real property or structures and have already incurred any cost or expense, by reason of leakage from, or from failure, repair, or removal of, all or any portion of such polybutylene plumbing or yard service line which was installed between January 1, 1978 and July 31, 1995; or (3) will own such real property or structures during the term of entitlement to relief under the Settlement Agreement.
1 Suppl. CP at 1517-18. The court excluded from this class “[a]ll persons who, in accordance with the terms of the Settlement Agreement, execute a timely request for exclusion from the Settlement Class.” 1 Suppl. CP at 1518.
The Nobl Park Apartments is a 144-unit complex located in Vancouver, Clark County. At the time of construction, *835 Robert Oja, Robert Broselle, and Leonard Ledoux, who are not parties to this appeal, owned the complex. The complex was constructed between 1985 and 1990. Action Plumbing, who also is not a party to this appeal, installed the plumbing in the complex. Familian, owned by Keller, supplied the pipes and fixtures to Action Plumbing. Nobl Park purchased the complex in December 1999.
During the discussions prior to purchase, Nobl Park received notice of certain rights in connection with the Cox Settlement.[1] The notice specifically stated that owners of structures with polybutylene plumbing who acquired the structures after 1995 could “opt out” (7 CP at 1199) by sending a specified opt-out notice to the Consumer Plumbing Recovery Center by December 31, 1999. In a separate document from the notice Nobl Park received, the Cox Settlement provided that a party who acquires a multiple family unit after the initial notice date loses its right to opt out upon acquisition.
According to Nobl Park, the apartment units have experienced several plumbing failures. As a result, Nobl Park has had to replace the components and clean and repair the damage to tenants’ units.
On January 18, 2002, Nobl Park sued Shell, Celanese, Familian, and Keller for damages that the failed poly-butylene plumbing caused. On March 25, 2002, both Shell and Celanese requested summary judgment, claiming that the Cox Settlement precluded Nobl Park’s cause of action.[2] The trial court granted summary judgment to Shell and Celanese on November 26, 2002. On January 2, 2003, Familian and Keller filed a summary judgment motion and argued that Nobl Park’s economic loss claims are not *836 recoverable under the WPLA. Familian and Keller also argued that the trial court’s prior summary judgment and the statute of limitations barred Nobl Park’s breach of warranty claim under the Uniform Commercial Code. The trial court granted summary judgment to Familian and Keller on February 25,2003. On May 2,2003, the trial court dismissed with prejudice Nobl Park’s claims against Shell, Celanese, Familian, and Keller. Nobl Park appeals.
ANALYSIS
Summary Judgment for Shell and Celanese
Nobl Park argues that the Cox Settlement’s “opt out” clause denied it due process by failing to adequately inform Nobl Park of its right to opt out. Nobl Park also claims that because the settlement did not provide adequate due process, we should not give full faith and credit to the Cox Settlement.
 The United States Constitution requires that “[f]ull faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state.” U.S. Const, art. IV, § 1. This applies to court judgments in which “ ‘the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced.’ ” Underwriters Nat’l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass’n, 455 U.S. 691, 704, 102 S. Ct. 1357, 71 L. Ed. 2d 558 (1982) (quoting Hampton v. M’Connel, 16 U.S. (3 Wheat.) 234, 235, 4 L. Ed. 378 (1818)). The federal Full Faith and Credit Act implements the protection of the United States Constitution’s Full Faith and Credit Clause. 28 U.S.C. § 1738.
A state court’s judgment in a class action is a “judicial proceeding” under section 1738 and is presumptively entitled to full faith and credit from the courts of other jurisdictions. Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 374, 116 S. Ct. 873, 134 L. Ed. 2d 6 (1996). *837 However, a foreign state is not required to give full faith and credit to a judgment against an affected party who did not receive due process when the judgment was entered. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 482-83, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982).
Here we consider whether the Cox Settlement notice deprived Nobl Park of due process.[3] If it did, then we need not give full faith and credit to the Cox Settlement. Due process in a class action notice requires: (1) “reasonable notice” that apprises the party of the pendency of the action, affords the party the opportunity to present objections, and describes the parties’ rights; (2) the opportunity to remove themselves from the action by “executing and returning” an “opt out” or “request for exclusion” form to the court; and (3) a named plaintiff who adequately represents the absent plaintiffs’ interests. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812,105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985).
Nobl Park does not dispute that it received notice of the settlement in 1999. But it claims that the notice was inadequate. We thus consider whether the notice was adequate and whether it gave Nobl Park the opportunity to “opt out” of the Cox Settlement.
Nobl Park received notice stating that a settlement agreement existed. This notice also included provisions for obtaining information on whether a purchaser qualifies for the class or is otherwise subject to the settlement. The notice did not otherwise expressly refer to Section 10.6 of the Cox Settlement, which read:
A Person who acquires a Unit, other than an owner-occupied single-family unit, after the Initial Notice Date with actual notice or knowledge (as opposed to constructive notice) of this settlement shall have no right to opt-out of the Settlement Class with respect to that Unit.
*838 1 Suppl. CP at 1553. Section 10.6 of the Cox Settlement precluded a purchaser of a multi-unit dwelling from “opting out” of the settlement if the purchaser had actual knowledge of the settlement at the time of the purchase.
During oral argument before this court, Shell/Celanese’s counsel asserted that Nobl Park’s consultant had mentioned section 10.6 of the Cox Settlement to Nobl Park’s agent, Naimo, before the purchase, but that it did not read the language of the provision until after the purchase was complete.[4]
 We agree with Shell/Celanese. Initial notices to class members need not contain all information and details of class membership or terms of settlement. A notice is sufficient if it provides general notice of the action, class membership require *839 ments, and provides information by which interested persons can obtain a copy of the settle-ment. Grunin v. Int’l House of Pancakes, 513 F.2d 114, 122 (8th Cir.), cert, denied, 423 U.S. 864 (1975). Due process does not require that the settlement agreement be included with the notice. Grunin, 513 F.2d at 122. Here, the notice Nobl Park received defined class members, including those who “will own such real property or structures during term of entitlement to relief under the Settlement.” 7 CP at 1196. The notice further stated that class member exclusions apply to “all persons who, in accordance with the terms of the Settlement Agreement, execute a timely request for exclusion from the Settlement Class.” 7 CP at 1196. This notice sufficiently informed Nobl Park of the existence of a settlement agreement affecting its rights before it finalized the purchase of the property. Nobl Park chose not to request a copy of the Cox Settlement or to review the exclusion requirements. And due process does not require allowing Nobl Park to “opt out” now where it failed to fully inform itself of the Cox Settlement terms. Thus, the notice provided Nobl Park due process and the Cox Settlement is entitled to full faith and credit on this basis.
Finally, Nobl Park contends that the class in the original settlement, single unit owners, was not representative of the interests of multiple unit owners, such as Nobl Park. The representative party in a class action must adequately protect the interests of the parties it purports to represent. Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003). Moreover, there must not be a “substantial” or “fundamental” conflict of interest between the parties in the class. Valley Drug, 350 F.3d at 1189. But “minor conflicts” will not defeat class certification. Valley Drug, 350 F.3d at 1189.
Nobl Park attempts to distinguish itself from the representative class by pointing to the higher cost of multi-unit repairs and different methods of providing notice to the two groups. But there is no conflict of interest or difference in claims between single and multi-unit owners. Both seek to recover replacement costs and damages caused by the installation of the faulty plumbing. Thus, because there is no significant difference between the legal interests and claims of single home owners and multi-unit owners, there *840 is no basis to conclude that the certified class representatives did not adequately represent the interests of multi-unit owners.[5]
Thus, as we are required to do, we give full faith and credit to the Cox Settlement; Nobl Park may recover only under the terms of that agreement. The trial court’s grant of summary judgment was appropriate.
Summary Judgment for Familian and Keller
Nobl Park also appeals the trial court’s summary judgment for the pipe suppliers, Familian and Keller, arguing that damages were not “economic losses,” which Nobl Park acknowledges are not recoverable under the WPLA.
We apply two tests in Washington to determine whether a loss is an economic loss in contract, which is not recoverable under the WPLA, or a sudden injury in tort, which may be recoverable. The two tests are the “sudden and dangerous test” and the “evaluative approach.” Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc., 119 Wn.2d 334, 351, 831 P.2d 724 (1992). Under either of these tests, Nobl Park’s losses were economic and thus excluded from the WPLA.
Under the “sudden and dangerous test,” a party may recover in tort if a sudden and dangerous event caused damage. Touchet Valley, 119 Wn.2d at 351. Nobl Park cannot rely on the sudden and dangerous test here because no sudden calamitous event occurred that caused Nobl Park damage. Nobl Park minimizes the calamitous requirement by claiming that its absence is a “mere fortuity.” But the record before us shows that the polybutylene tubing corro- sion occurred over several years, causing many small leaks, and was a series of events, not a calamitous bursting. Thus, Nobl Park cannot recover under the WPLA for a sudden calamitous event.
A party need not always wait for a calamitous event before being able to recover damages in tort. Under the “evaluative approach,” a vulnerable party may act before calamity strikes. Touchet Valley, 119 Wn.2d at 351 (citing Wash. *841 Water Power Co. v. Graybar Elec. Co., 112 Wn.2d 847, 866-67, 774 P.2d 1199, 779 P.2d 697 (1989)). The evaluative approach requires that we consider three factors: (1) the nature of the defect, (2) the type of risk, and, (3) the manner in which the injury arose. Touchet Valley, 119 Wn.2d at 353 (citing Pa. Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1173 (3d Cir. 1981)).
First, as to the nature of the defect, we consider whether the product failed to meet the purchaser’s expectations, such as a gradual internal deterioration, or whether it was generally defective; that is, whether it suddenly leaked, exploded, or came apart, such as in a violent collision. Staton Hills Winery Co. v. Cottons, 96 Wn. App. 590, 598, 980 P.2d 784 (1999); Touchet Valley, 119 Wn.2d at 353-54. The record shows that leaks here occurred throughout the complex at different times in different locations, and that the corrosion was gradual.
Second, as to the type of risk, we consider whether the risk was foreseeable, whether the purchaser had bargaining power to reduce the risk, and whether the risk was to persons or property. Staton Hitts Winery, 96 Wn. App. at 598. Nobl Park admitted that it was aware of the leaks and of the existence of the class action suit prior to finalizing its purchase of the complex. Thus, the risk was necessarily foreseeable, if not assumed, and Nobl Park could have bargained to reduce it.
Finally, we consider the manner in which the injury arose, specifically whether the defect arose gradually by stealth or whether it was obvious after initial use. Staton Hitts Winery, 96 Wn. App. at 599. Although the corrosion itself was gradual, caused by a series of leaks at different times and locations, as to Nobl Park, the defect and likely injury was obvious at the time it purchased the apartment complex. Under the three evaluative approach factors, Nobl Park has not shown that its damages were anything other than economic losses of a contractual nature. Therefore, Nobl Park’s contractual damages are not recoverable under the WPLA.
*842 Summary judgment for Familian and Keller was also appropriate.[6]
We affirm the trial court’s summary judgment in favor of Shell, Celanese, Familian, and Keller.
Armstrong, J., and Seinfeld, J. Pro Tem., concur.
After modification, further reconsideration denied December 14, 2004.

 The notice stated that:
If you qualify for the right to exclude yourself from the Class, and you wish to pursue your separate lawsuit and not participate in the Settlement of this Lawsuit, you must request exclusion from the Class as described below.
7 CP at 1198.

 Nobl Park also filed a summary judgment motion, challenging each party’s affirmative defenses.

 But a party’s right to due process is protected by the court certifying a class action and the court’s reviewing subsequent appeals in the state issuing the judgment in such action; it is not the obligation of the courts of another state to collaterally review due process challenges. Epstein v. MCA, Inc., 179 F.3d 641, 648 (9th Cir.), cert, denied, 528 U.S. 1004 (1999).

 Nobl Park disputed this assertion but our review of Naimo’s deposition supports it. Naimo became familiar with polybutylene plumbing in 1993, when it was discovered in an apartment complex in Waco, Texas, that he owned through Butterfield Capitol Corporation. Naimo attested that there were “several hundred leaks while we owned it.” CP at 304. “lb know what polybutylene really was came after we sold the property. We had attempted to get some legal resolution to that down there. We were told it was too late. We discounted the property severely and sold it.” CP at 3076.
Naimo knew that the apartments Nobl Park was considering buying also had polybutylene plumbing and that in June 1999, the previous owners had filed a damage claim under the Cox settlement. This was six months before Nobl Park closed the sale. CP at 3048, 3067-69. Naimo indicated that it was Nobl Park’s interest in the apartments that triggered the prior owners to bring in Class Action Recovery Services, Inc., and Charles Johnson, consultants with extensive experience with the polybutylene class action and the Cox settlement specifically.
Naimo stated in his deposition that Johnson “informed [him] that opting out was an option available to us. Had we not been able to opt out, we would not have completed the purchase of the property.” CP at 3075. But, although he did not admit that Johnson expressly advised him of the opt-out exclusions of section 10.6, he acknowledged that the class action notice indicated that there were some exclusions, CP at 3080, that he was provided a toll free number to find out his rights under the Cox Settlement that he did not use, CP at 3081, that he was aware of the Cox lawsuit and the existence of a settlement agreement, CP at 3088. Naimo also agreed that section 10.6, had he read it, would have indicated to him that “it is possible to interpret that as meaning that Nobl Park cannot get out. But there are other sides to the story.” And stated, “I’m not an expert to bring that other side that says we should be opting out.” CP at 3088. Naimo also acknowledged that the consultant, Johnson, was an expert and knew of section 10.6 but he argued, “It differs with what Charles Johnson told me, not that that section says what it says, but it differs to the extent of where something else opens the door in our situation.” CP at 3089 (emphasis added).
Nobl Park knew that the complex had polybutylene plumbing and what that meant. They knew of the class action lawsuit and that the prior owners had filed a claim for damages under its provision. They knew or should have known that they did not have a right under the agreement to opt out of the class and seek separate redress. Nevertheless, when they purchased the property on December 28, 1999, Nobl Park withdrew the claim filed by the apartment complex’s prior owners. CP at 2981.

 Courts have found inadequate representation by the class if there are concerns as to future plaintiff’s recovery, such as an expired settlement or depleted funds. Ortiz v. Fibreboard Corp., 527 U.S. 815, 864, 119 S. Ct. 2295, 144 L. Ed. 2d 715, remanded by 527 U.S. 1031 (1999). But our record presents no such concerns.

 Because neither party requested attorney fees, none are ordered.